412 P.2d 736

STATE of Arizona ex rel. Obed M. LASSEN,
State Land Commissioner of the State
of Arizona, Appellant,

v.

U. S. LAND COMPANY, Del Monte Invest-
ment Company, Robert Wilson, Wilson
Grain Company, and Bud Laing, Appellees.

No. 2 CA–CIV 183.

Court of Appeals of Arizona.

April 4, 1966.

Rehearing Denied April 19, 1966.

Review Denied May 17, 1966.

**168**

Darrell F. Smith, Atty. Gen., Dale R. Shumway, Sp. Asst. Atty. Gen., Phoenix, for appellant.

Willoughby & Slaughter, by Stuart C. Willoughby, Willcox, for appellees.

KRUCKER, Chief Judge.

The State Land Department, plaintiff below, initiated action for a temporary restraining order and permanent injunction to enjoin the appellees, defendants below, from continuing the construction of eight irrigation wells. Both parties filed motions for summary judgment, the lower court granted defendants' motion and quashed the temporary restraining order issued. From that judgment appellant appeals.

The facts surrounding this appeal have been stipulated to and will be briefly surveyed.

The State Land Commissioner issued an order on April 1, 1965, designating an area lying within the Douglas Groundwater Basin as a critical groundwater area. The order became final and effective at midnight, May 5, 1965. One of the effects of such designation is to curtail the construction of wells located within the Douglas Groundwater Basin.

Appellees planned the construction of eight agricultural irrigation wells on property located within the Douglas Groundwater Basin to be purchased by Wilson Grain of Lubbock, a corporation qualified to do business in Arizona. On April 24, 1965, appellees mailed notices of intent to drill wells to the State Land Commissioner and on April 26, 1965, received duplicate copies of said notices, well drilling cards, reports of well driller forms and reports of equipment installed forms. The land, comprising 1,362 acres, was purchased on April 26, 1965, for the total purchase price of $102,150.00. The well sites were surveyed and on April 28, 1965, an oral contract was entered into for the digging of nine slush pits, for "four miles of 11-foot wide knifing to test soil", and to construct six miles of road on the land. The contract price for the completion of this work was $757.75. Thereafter, contracts were entered into for the purchase of casing and drilling of the eight wells. By midnight, May 5, 1965, the following work was completed on the eight well sites:

WELL NO. 1: Slush pit constructed; roads to well site graded; casing on the ground; no actual drilling commenced.

WELL NO. 2: Slush pit constructed; drilling rig located on the site and a hole two feet in depth had been hand dug and the drilling bit dropped in this hole; casing on ground but no actual drilling had commenced.

WELL NO. 3: Slush pit constructed; road graded to well site; the well had been drilled and cased to 92 feet; the drilling rig was moved on May 5, 1965, to well site No. 7.

WELL NO. 4: Slush pit constructed; road graded to well site; well drilled and cased to 11 feet; casing on ground.

WELL NO. 5: Slush pit constructed; road graded to well site; drilling rig poised over well site, tools had been strung and the drilling bit dropped on the ground at the point where the well was to be drilled; casing on the ground but no drilling had commenced.

WELL NO. 6: Slush pit constructed; road graded to well site; drilling rig poised over well site and the well had been drilled and cased to a depth of 165 feet by May 5, 1965.

WELL NO. 7: Slush pit constructed; road graded to well site; casing on ground; well drilling rig located over well site and the drill bit had been dropped at the point where the well was to be drilled, but no actual drilling had commenced.

WELL NO. 8: Slush pit constructed; road graded to well site; casing on ground; drilling rig poised over site, with tools strung, and bit dropped on the ground where the well was to be drilled, but no actual drilling had commenced.

The trial court, in granting appellees' motion for summary judgment, held that all eight wells were substantially commenced at midnight, May 5, 1965, the effective date of the State Land Department's order declaring the Douglas Groundwater Basin to be a critical groundwater area, in accordance with A.R.S. § 45-313, subsec. C. A.R.S. § 45-313, subsec. C provides:

"No permit shall be required for completion of any well located within a critical groundwater area and *substantially commenced* prior to the designation of the critical groundwater area, but the well or other works for the withdrawal of ground water thus *substantially commenced* shall be completed within one year from the date of designation or alteration of the critical groundwater area." (Emphasis supplied)

The sole question presented for review in this appeal is the propriety of the lower court's conclusion that the eight wells were substantially commenced at midnight, May 5, 1965. This same issue was posed in the consolidated cases of State ex rel. Lassen v. Harpham, 2 Ariz.App. 478, 410 P.2d 100 (1966), review denied February 23, 1966. In that case we held:

" * * * that the words 'substantially commenced' require that the excavation of the well itself must have begun to some degree, either by penetration of the earth with a rotary drill, or the excavation of the earth manually as was done in this case by the 'spudding-in' of the well. In those cases where the extent of such

excavation alone cannot be said in common parlance to be substantial, then other work performed or actions taken which are necessary to accomplish the final construction of the well may be considered in determining whether the commencement of excavation was a substantial commencement. Such other factors, to be considered *in addition to* actual excavation of the well itself, may include the grading of road for the purpose of providing ingress and egress to the well site, the purchase of sufficient well casing and drilling mud, as well as other necessary supplies, to complete the well, the construction of slush-pits, as well as others." State v. Harpham, supra, at 410 P.2d 110.

Both the appellant and appellees have challenged the soundness of that decision and seek to have it either modified or overturned and a new standard adopted. The State, as well as appellees, strenuously urge that we adopt a good faith standard in determining substantial commencement of wells. However, in our previous opinion, State v. Harpham, supra, we concluded that "such is not provided for in the statute and this Court cannot judicially legislate." We find no basis for altering this conclusion.

The appellant, by this appeal, seeks a stronger judicial pronouncement regarding the definition of "substantially commenced". Appellees, on the other hand, have challenged our opinion in the Harpham case and strenuously maintain that we have failed to consider the definition of these terms given by the legislature in the Laws of 1953, Chapter 42, Section 4(b), which states:

" 'Well substantially commenced' means a well *the construction of which had been commenced* in any part of the restricted area as herein defined lying outside the boundaries of the presently designated critical areas under the groundwater code of 1948, at the time this Act became effective as to the area embracing such well." (Emphasis supplied)

Appellees urge that by applying the rule of in pari materia, and since the term substantially commenced as contained in A.R.S. § 45–313, subsec. C is ambiguous, we must determine the legislative intent in the use of this term through application of the above noted section of the Laws of 1953. It is urged that since the legislature has defined the words "substantially commenced" in a previous statute on the same subject, The Groundwater Code, this pronouncement must form the basis of our determination of the provisions of A.R.S. § 45–313, subsec. C. However, we find no conflict between the legislative definition of "substantially commenced" as contained in the Laws of 1953, Chapter 42, Section 4(b), and our interpretation of the legislative intent in adopting A.R.S. § 45–313, subsec. C, as contained in our opinion in the Harpham case.

The word "construction", as defined in Webster's New International Dictionary (3d ed. 1964) means, among other definitions, "the act of putting parts together to form a complete and integrated object"; "something built or erected". Black's Law Dictionary (4th ed. 1951), on the other hand, defines "construct" to mean "to build; erect; put together; make ready for use." These definitions appear sufficient to indicate that something more than mere preparatory work, as maintained by appellees, is necessary to constitute "construction" as used in the Laws of 1953, Chapter 42, Section 4(b). Construction implies the building or erection of some object, not the mere planning or developmental work requisite therefor.

Webster's New International Dictionary (3d ed. 1964), defines "well", among other definitions, as "a pit or hole sunk (as by digging, boring, or drilling) into the earth to such a depth as to reach a supply of water, * * *" In accordance with these pronouncements, we conclude that to commence the construction of an irrigation well means the commencement of the digging thereof by actual penetration of the ground. We find no conflict between our decision in the Harpham case and the definition given the term "substantially commenced" by our legislature in the 1953 Act.

We have previously noted the amount of work completed on the construction of the eight well sites as of midnight, May 5, 1965. In accordance with these findings and the holding of this Court in the Harpham case, we hold that wells numbered 3 and 6 had been substantially commenced prior to midnight, May 5, 1965, having been drilled to depths of 92 feet and 165 feet, respectively. As to wells numbered 2 and 4, we hold that the excavation completed, in conjunction with the location of drilling rigs on the sites and preparatory work accomplished as of midnight, May 5, 1965, constitutes these wells substantially commenced in accordance with the standard established in the Harpham case. We further hold that wells numbered 1, 5, 7 and 8 were not substantially commenced as of the effective date of the State Land Department's order.

Our decision in the Harpham case has been strenuously attacked by these learned counsel. There can be no dispute that fine points of law often result from interpreting ambiguous legislative enactments. We believe, however, that our decision establishes a functional standard for the administration of A.R.S. § 45–313, subsec. C, well within the legislative intent in adopting this statute, and provides some leeway in its application to the diverse situations which will arise thereunder. Such result is requisite for the orderly administration of such legislation.

In view of these findings, the judgment of the lower court awarding summary judgment to appellees is affirmed as to wells numbered 2, 3, 4 and 6; the judgment is reversed as to wells numbered 1, 5, 7 and 8, and the case is remanded to the lower court with instructions to issue permanent injunctions enjoining appellees from continuing the construction of these wells.

HATHAWAY and MOLLOY, JJ., concur.